## STATE OF CONNECTICUT *v.* DUANE ZIEMBA
## (6334)

DUPONT, C. J., SPALLONE and FOTI, Js.

Argued October 4, 1988—decision released July 19, 1989

*G. Douglas Nash,* assistant public defender, for the appellant (defendant).

*Vincent J. Dooley,* deputy assistant state's attorney, with whom, on the brief, was *Timothy J. Liston,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crimes of robbery in the first degree; General Statutes § 53a-134 (a) (4);[1] assault in the third degree; General Statutes § 53a-61 (a) (1); and conspiracy to commit robbery in the first degree. General Statutes §§ 53a-48,[2] 53a-134 (a) (4). The defendant claims that the trial court erred (1) in denying his motions for judgment of acquittal on the robbery and conspiracy to commit robbery charges, (2) in defining the term "owner" during its instructions to the jury in such a way as to enlarge the offense of robbery, (3) in instructing the jury on statutory alternatives for which there was insufficient evidence, thereby denying him the right to a unanimous jury, (4) in incorporating into its charge to the jury on

[1] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged."

The crime of robbery is defined in General Statutes § 53a-133, which provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[2] General Statutes § 53a-48 provides in pertinent part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

conspiracy the same erroneous robbery charge and thus enlarging the offense, and (5) in failing to instruct the jury regarding the dangers of testimony from an accomplice. We agree with the defendant's first claim of error and therefore it is unnecessary to review his other claims.

From the evidence produced at trial, the jury could reasonably have found the following facts. Between November and December, 1986, Brian Britton was employed as the assistant manager of the Kentucky Fried Chicken restaurant located at 382 East Main Street in Middletown. As part of his duties, Britton would deposit, at the close of each business day, the cash receipts for that day in the night depository at the bank. Britton and the defendant, Duane Ziemba, along with Margaret Bair, the defendant's girlfriend, agreed to stage a robbery of the restaurant's cash proceeds. Their plan was that the defendant, using a toy pistol, would "rob" Britton, and later the two would meet and divide the money. Britton, who had been previously involved in criminal activities and was known to the police, feared that the police might suspect a staged robbery. Accordingly, he and the defendant planned to have present an unwitting coworker who would witness the events and whose account of the events they hoped would lend credence to Britton's report of a robbery.

Pursuant to this plan, Britton closed the restaurant on December 11, 1986, and, carrying a bag of fried chicken and the day's cash proceeds, approximately $1800, walked with a coworker, Eric Beavers, toward his car, which was parked behind the restaurant near a trash dumpster. As Britton and Beavers were about to enter the car, they were accosted by the defendant, who, wearing a ski mask and a dark shirt and brandishing a toy pistol, leaped from behind the dumpster and directed them to get on the ground or he would

"blow [their] . . . head[s] off." Beavers complied and, while Beavers was on the ground, the defendant ordered Britton to throw the money bags over to him. Britton threw the money bags and the bag of fried chicken. While this was occurring, Beavers, still on the ground, looked up at the defendant. The defendant kicked Beavers in the shoulder, saying, "I told you to keep your head down." The defendant then fled from the scene, taking the money and the bag of chicken with him.

Later that morning, the defendant and Britton met to divide the money. The defendant informed Britton that the money totaled $1100 and offered Britton one half of that amount. Britton, knowing the defendant was shortchanging him, became angry and informed the police of the defendant's involvement in the crime. The police apprehended the defendant that afternoon and transported him to the Middletown police department. Upon learning that Britton had implicated him in the robbery, the defendant implicated Britton.

Shortly after the defendant's arrest, the defendant's girlfriend, Margaret Bair, took the police along the route the defendant had used to escape on the night of the robbery. Bair had accompanied the defendant during his flight from the scene. Along the route shown them by Bair, the officers discovered a plastic pistol, a ski mask, and a bag bearing the Kentucky Fried Chicken logo and containing chicken bones.

In the defendant's car, the police found a red flannel shirt and a pair of sneakers. The soles of the sneakers were determined to match the footprints left in the snow at the crime scene. Moreover, police talked with a witness who stated that he had observed the defendant's car departing from the scene.

The defendant's first claim is dispositive of the appeal. The defendant claims that the trial court erred

in denying his motions for judgment of acquittal on the first degree robbery and conspiracy to commit robbery charges. During argument to the court on the motions for judgment of acquittal, the defendant consistently pointed out that he had been specifically charged in the information with having "committed a robbery *of Brian Britton.*" The defendant's position was that the evidence presented was insufficient to support that charge. The defendant has made a number of arguments, both to the trial court and on appeal, in support of that position. We agree with his argument that there was insufficient evidence to support a finding that the defendant used or threatened the use of force for the purpose of preventing or overcoming resistance to the taking or retention of the property or compelling the owner or another to deliver up the property. Accordingly, we find error.

The following facts are pertinent to our analysis. In count one of the substitute information, the state charged the defendant with robbery in the first degree, as follows: "At the town of Middletown, in the parking lot of Kentucky Fried Chicken, 382 South Main Street, on or about the 11th day of December, 1986 at approximately 10:00 p.m., the said Duane Ziemba *did commit a robbery of Brian Britton* and in the course of the commission of the crime the said Duane Ziemba did display and threaten the use of what he represented by his words and conduct to be a pistol, in violation of Section 53a-134 (a) (4) of the Connecticut General Statutes." (Emphasis added.) The theory of the state's case, as presented through the testimony of the various witnesses, was that Britton and the defendant conspired to take the money and to "stage" a robbery in front of Eric Beavers in an effort to conceal their involvement in the theft. The evidence was that the two men had planned in advance that the defendant would pull out a toy gun in order to make it appear to Beavers

that the money was being taken from Britton by force and against his will. The question is whether, in light of the charge as set out in the information, and in light of the evidence produced at trial, the state successfully made out a case against the defendant of robbery in the first degree.[3] We hold that it did not.

By charging the defendant with "commit[ting] *a robbery of Brian Britton*," the state effectively narrowed the charge against the defendant. General Statutes § 53a-133 defines the alternative ways in which the crime of robbery may be committed: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." Because the defendant was specifically charged with having committed "a robbery of Brian Britton," in the course of which he "did display and threaten the use of what he represented by his words and conduct to be a pistol," the

---

[3] The defendant elected to introduce evidence on his own behalf after the trial court had denied his motion for judgment of acquittal made at the end of the state's evidence. Under the waiver rule, a defendant may not appeal the denial of a motion for judgment of acquittal brought at the close of the state's case-in-chief when he elects thereafter to introduce evidence in his own behalf. *State* v. *Simino,* 200 Conn. 113, 118, 509 A.2d 1039 (1986); *State* v. *Lizzi,* 199 Conn. 462, 464, 508 A.2d 16 (1986); *State* v. *Rutan,* 194 Conn. 438, 440–44, 479 A.2d 1209 (1984). In reviewing the sufficiency of the evidence in cases in which the defendant has elected to present a defense after his initial motion for judgment of acquittal is denied, therefore, we ordinarily look at the evidence in toto in order to review the trial court's ruling on the motion for judgment of acquittal made after all the evidence had been presented. *State* v. *Simino,* supra. We have reviewed the record with these principles in mind and conclude that the evidence as a whole fails to support the allegations set out in the information.

reasonable implication is that the state was charging the defendant with committing a larceny against Britton and threatening the use of a firearm *for the purpose of effectuating the taking of the property from Britton.* That is, the information can only fairly be read to inform the defendant that he was being charged with displaying what he represented to be a firearm for the purpose of either preventing or overcoming any resistance by Britton to the taking or compelling Britton to deliver up the money. "The function of an accusatory pleading such as an information is to inform a defendant of 'the nature and cause of the accusation' as required by our federal and state constitutions. U.S. Const., amend. VI; Conn. Const., art. I § 8." *State* v. *Carter,* 189 Conn. 631, 646, 548 A.2d 379 (1983). Nothing is more elementary in criminal law than that an accused is required to defend only against the charge alleged. *State* v. *Belton,* 190 Conn. 496, 501, 461 A.2d 973 (1983); *State* v. *Ruiz,* 171 Conn. 264, 269, 368 A.2d 222 (1976); *State* v. *King,* 6 Conn. App. 247, 251, 504 A.2d 560 (1986). The state is limited to proving that the defendant has committed the offense in substantially the manner described. *State* v. *Belton,* supra.

In this case, the evidence failed to support what the state alleged in the information. "Without the purpose of '(1) [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny'; General Statutes § 53a-133; there can be no robbery or plan to commit a robbery." *State* v. *Coston,* 182 Conn. 430, 435, 438 A.2d 701 (1980). " '[T]he word "purpose" is synonymous with "object" and "intent." ' *State* v. *Kurvin,* 186 Conn. 555, 567, 442 A.2d 1327 (1982)." *State* v. *Williams,* 202 Conn. 349, 356, 521 A.2d 150 (1987); see

also *State* v. *Horne,* 19 Conn. App. 111, 562 A.2d 43 (1989). "Intention is a mental process which, of necessity, must be proven either by the statements or the actions of the person whose conduct is being examined." *State* v. *Williams,* supra, 356–57.

The only evidence of the defendant's purpose in displaying what he represented by words or conduct to be a firearm was the state's evidence regarding the agreement between Britton and the defendant to "stage" a robbery in front of Beavers. The necessary inference to be drawn from that testimony was that, in pulling out the toy gun, the defendant, acting in conformance with that agreement, merely intended to deceive Beavers as to the true nature of the transaction then occurring. The state introduced no evidence to support a conclusion that the defendant pulled out the toy gun for the purpose of effectuating the taking of the money from Britton. In short, the state failed to prove that the defendant committed the crime of robbery as alleged in the information.

The issue of whether the state's evidence was legally sufficient to establish that the defendant committed the crime of robbery in some way other than that charged is not before us.[4] We are faced with an information charging the defendant with having committed a robbery in the first degree *in a particular manner.* The

[4] The state argues that there was sufficient evidence to support a conviction of robbery in that the defendant used force against Eric Beavers. In support of this argument, the state points out that the force or threat of force may be directed at anyone who is in a position to prevent the taking. See *State* v. *Tinsley,* 181 Conn. 388, 391, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981). Whether in the abstract the evidence could be found to support a finding that the defendant committed a robbery in any of the myriad ways possible under the statute is not the issue before us. The defendant was charged with one specific way of committing the crime of robbery, and the evidence simply fails to support that charge. The defendant was *not* charged in count one with robbery by virtue of his use of force against Beavers.

possibility that the state's evidence might have been legally sufficient to establish the commission of a robbery by means other than that alleged is immaterial. The state is constrained to prove what it alleges in the charging documents.

The defendant claims as well that the evidence failed to support the charge of conspiracy to commit robbery in the first degree.

In the fourth count of the information, the state charged the defendant as follows: "[The state] further accuses Duane Ziemba of conspiracy and charges that at the Town of Middletown, at the Kentucky Fried Chicken . . . on or about the 11th day of December 1986, the said Duane Ziemba, with intent that *conduct constituting a crime be performed, namely, robbery in the first degree* ([General Statutes] § 53a-134 [a] [4]), did agree with Brian Britton and Margaret Bair to engage in and cause the performance of such conduct; in violation of Section 53a-48 of the Connecticut General Statutes." The state described the overt act as follows: "In pursuance of said conspiracy, the aforesaid Duane Ziemba, on various dates in December 1986 prior to December 11, 1986, *did discuss and plan with Brian Britton a staged robbery of Brian Britton* at his place of employment, Kentucky Fried Chicken, and *said robbery did take place* at about 10 p.m. on December 11, 1986." Although the information charged that the defendant agreed with two other individuals to bring about the elements of the offense of robbery in the first degree, the evidence presented at trial failed to support the charge.

To establish the crime of conspiracy under General Statutes § 53a-48, it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the con-

spiracy by any one of the conspirators. *State* v. *Beccia,* 199 Conn. 1, 3, 505 A.2d 683 (1986). Conspiracy is a specific intent crime, with the intent divided into two elements: (1) the intent to agree or to conspire; and (2) the intent to commit the offense that is the object of the conspiracy. Id., 4. To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree, but also that they intended to commit the elements of the offense. Id.

In this case, the state charged the defendant with the crime of conspiracy to commit robbery in the first degree as defined in General Statutes § 53a-134 (a) (4), in violation of § 53a-48. The state was thus required to prove, inter alia, (1) that the defendant intentionally entered into an agreement with at least one other person to engage in conduct constituting the crime of robbery in the first degree, as defined by General Statutes § 53a-134 (a) (4), and (2) that the defendant intended to commit the elements of the offense. The evidence presented at trial, however, failed to establish either. Again, the evidence presented established only that the defendant conspired with Britton and Bair to use force (i.e., to display what he represented by words or conduct to be a firearm) for the purpose of deceiving Beavers, the unwitting bystander-witness, whose presence at the scene was central to their efforts to maximize their chances of avoiding detection and prosecution for a theft offense. There was no evidence to support a finding that the defendant entered into an agreement to use force for any of the purposes proscribed by § 53a-133, the statute defining the crime of robbery, i.e., preventing or overcoming resistance to the taking or retention of property. Because the state failed to prove that the defendant agreed to engage in the use of force for any of the purposes outlined in § 53a-133, the proof could not sustain the charge of con-

spiracy to commit robbery in the first degree. Alternatively, there was no evidence to establish that, in entering into an agreement, the defendant intended to use force for the purposes proscribed by the robbery statute. Under these circumstances, the defendant is correct in arguing that the trial court erred in denying his motion for judgment of acquittal on the conspiracy charge.

There is error, the judgment is set aside as to the conviction on count one of robbery in the first degree; General Statutes § 53a-134 (a) (4); and as to the conviction on count four of conspiracy to commit robbery in the first degree; General Statutes §§ 53a-134 (a) (4), 53a-48; and the case is remanded with direction to render judgment as on file as to counts two and three and to render judgment of not guilty on counts one and four.

In this opinion the other judges concurred.